IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-376

Filed 4 March 2026

Onslow County, No. 21CVD002254-660

CRAWFORD WHEELER, Plaintiff,

v.

KIYOKA WHEELER, Defendant.

Appeal by Plaintiff from Order entered 16 August 2024 by Judge William P. Shanahan, III, in Onslow County District Court. Heard in the Court of Appeals 16 October 2025.

*Hayes Law Offices, PLLC, by Mark L. Hayes, for Plaintiff-Appellant.*

*No brief filed by Defendant-Appellee.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Crawford Wheeler (Plaintiff) appeals from an Equitable Distribution Order awarding an unequal division of marital property to his ex-wife Kiyoka Wheeler (Defendant). The Record before us tends to reflect the following:

Plaintiff had a thirty-year career in the military. Defendant is from Japan. The parties met in Japan, married there in February 2005, and later moved to North Carolina. Plaintiff retired from the military in 2009.

The parties separated in July 2014. Plaintiff filed a Complaint for Absolute

Divorce on 29 June 2021. Defendant filed an Answer and Counterclaim on 1 September 2021. In the Counterclaim, Defendant stated, "on June 13, 2015[,] the parties entered into a Separation Agreement[.]" She attached a copy of the Separation Agreement as an exhibit. Among other provisions, the Separation Agreement required Plaintiff to pay Defendant $1,000 per month in spousal support. Defendant requested the Separation Agreement be incorporated into the divorce judgment.

Defendant filed an Amended Counterclaim on 16 September 2021. In this pleading, Defendant described the action as one for "absolute divorce, post separation support, alimony[, and] equitable distribution of the marital property[.]" Defendant sought an unequal division of the marital estate, with "a greater majority of the assets" going to her. Defendant's Amended Counterclaim departed from her first responsive pleading in two pertinent ways: it did not reference the Separation Agreement or attach it as an exhibit.

Plaintiff made a motion to sever the issue of Absolute Divorce, which the trial court allowed. The trial court entered a Judgment of Absolute Divorce on 27 September 2021; the Judgment clarified that "all other matters pending in this action shall remain open for a court to determine at a separate date."

On 29 March 2023, the trial court entered an order requiring Plaintiff to pay Defendant $614 per month in spousal support and the "marital share" of his monthly military retirement pay. The issue of spousal support and military retirement pay arrears was held open for future orders.

The trial court held a bench trial on the Equitable Distribution and Alimony claims on 25 April 2024. Plaintiff introduced the Separation Agreement into evidence without objection. Plaintiff acknowledged the document was missing a notarized page containing Defendant's signature, as is required by statute.[1] Plaintiff testified there once "was [a] second page" containing Defendant's notarized signature. Plaintiff asserted the document was "still a valid contract" even without the missing page. In an opening argument, defense counsel referred to the Separation Agreement as "void because of the fact it was not notarized." During cross-examination, defense counsel asked Plaintiff if the Separation Agreement had required him to "pay [Defendant] $1,000 per month" in spousal support, which Plaintiff confirmed. At closing, defense counsel asked the trial court to "consider the fact that [the parties] did have [a separation] agreement[,]" but asserted it "wasn't . . . binding."[2]

Defendant testified Plaintiff abused alcohol in the years leading up to their separation, had been verbally and physically abusive, and had made threats to kill her. Plaintiff disputed Defendant's testimony alleging alcohol abuse, testifying he

---

[1] To be "legal, valid, and binding," a separation agreement "must be in writing and acknowledged by both parties before a certifying officer[.]" N.C. Gen. Stat. § 52-10.1 (2025). Notaries public are qualified certifying officers. *Id.* § 52-10(b).

[2] Defense counsel also claimed at closing that the Separation Agreement's non-binding status had "already been determined." This appears to have been a suggestion that a prior trial court had determined the Separation Agreement was non-binding. However, at this trial, no evidence was introduced of any prior trial court finding the Separation Agreement invalid. Nor is there any such evidence in the Record. Additionally, "it is axiomatic that the arguments of counsel are not evidence." *Blue v. Bhiro*, 381 N.C. 1, 6, 871 S.E.2d 691, 695 (2022) (citation and quotation marks omitted). Thus, we do not consider defense counsel's assertions about the Separation Agreement during opening or closing arguments as evidence.

drank alcohol "minimally." Plaintiff also denied being abusive to Defendant during their marriage and stated he had never threatened to kill her.

The trial court entered its Order on Equitable Distribution and Alimony on 16 August 2024. The trial court made Findings of Fact regarding the assets and debts the parties had "jointly identified . . . as property for equitable distribution[.]" It did not make a Finding addressing the validity of the parties' alleged Separation Agreement.

After tallying the assets, the trial court found: (1) $252,018 of the marital estate was in Plaintiff's possession; (2) $31,410 of the marital estate was in Defendant's possession; and thus (3) "a cash distributive award of $110,304 from Plaintiff to Defendant would result in an equal distribution of marital property."

However, the trial court found "[a]n unequal distribution in favor of Defendant is equitable based on the following factors:"

> a. N.C.G.S 50-20(c)(1): The income, property, and liabilities of each party at the time the division of property is to become effective.
>
> i. [Defendant] lost her Social Security benefits in her home country of Japan.
> ii. [Plaintiff] has income from Veteran's Affairs Disability, Social Security, and rental income from his home in California.
> iii. Plaintiff's rental income from the California home is artificially low given the lack of increases over such a long period of time.
> iv. Plaintiff has a large separate property estate value because of his ownership of the California home.

   b.  N.C.G.S 50-20(c)(3): The duration of the marriage and the age
       and physical and mental health of both parties.

       i.   The parties had a 9-year marriage. Plaintiff had health
            problems throughout the marriage that have worsened
            since the date of separation and said health problems
            are in part due to excessive alcohol use.

   c.  N.C.G.S 50-20(c)(7): Any direct or indirect contribution made
       by one spouse to help educate or develop the career potential
       of the other spouse.

       i.   [Defendant's] role in the marriage caused her to forgo
            developing job skills and work history, which limits her
            earning potential moving forward.

   d.  N.C.G.S 50-20(c)(12): Any other factor which the court finds to
       be just and proper.

       i.   Plaintiff's excessive alcohol use and Domestic Violence,
            including taking [Defendant's] cards, ID, and passport
            as well as [Plaintiff's] threat to kill [Defendant] during
            the marriage.

The trial court concluded, as a matter of law, "an unequal distribution in the

Defendant's favor . . . is equitable." It then ordered Plaintiff to pay Defendant a "cash

distributive award" of $250,000 within thirty days.[3]

Additionally, in a section of the Decree titled "Retirement Benefits," the trial

court stated Defendant received military retirement pay. In a pertinent part of this

---

[3] The trial court also resolved Defendant's alimony claim by ordering Plaintiff to pay $21,632 in spousal support arrears within thirty days and provided that once this payment was made, Plaintiff's "post separation support payments" would be terminated. The trial court also ordered Plaintiff to pay Defendant's attorney fees. The alimony and attorney fees issues are not before us in this appeal.

section, the trial court ordered: "Plaintiff shall maintain Survivor Benefit Plan Coverage with Defendant as the beneficiary of said coverage."

Plaintiff provided written Notice of Appeal on 6 September 2024.

## Issues

The issues on appeal are whether the trial court: (I) erred by failing to make a Finding of Fact regarding the validity of the alleged Separation Agreement; (II) erred in its consideration of statutory distributional factors in determining an unequal division of marital property was equitable; and (III) erred by ordering Plaintiff to maintain Survivor Benefit Plan Coverage with Defendant as the beneficiary.

## Analysis

I.  Finding on Separation Agreement

Plaintiff first argues the trial court erred by failing to make a finding about the validity of the parties' alleged Separation Agreement. Plaintiff contends the alleged Separation Agreement raised an issue of ultimate fact on which the trial court was required to make a finding, because if the document were found to be valid, it would be "a bar to [Defendant's] equitable distribution claim." We disagree.

Under our Rules of Appellate Procedure, "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1) (2025). "It is well-established that a contention not raised and argued

in the trial court may not be raised and argued for the first time in the appellate court." *Smallwood v. Smallwood*, 227 N.C. App. 319, 331, 742 S.E.2d 814, 822 (2013) (citation and quotation marks omitted). The purpose of Rule 10(a)(1) "is to require a party to call the [trial] court's attention to a matter upon which [the party] wants a ruling before [the party] can assign error to the matter on appeal." *Kaylor v. Kaylor*, 296 N.C. App. 80, 88, 907 S.E.2d 758, 765 (2024) (citation and quotation marks omitted). Our Supreme Court "has long held that where a theory argued on appeal was not raised before the trial court, 'the law does not permit parties to swap horses between courts in order to get a better mount in the [appellate courts].' " *State v. Sharpe*, 344 N.C. 190, 194-95, 473 S.E.2d 3, 5 (1996) (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)) (other citations omitted).

Additionally, where, as here, a trial court sits without a jury, it must "find the facts specially and state separately its conclusions of law[.]" N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (2025). "There are two kinds of facts: . . . . Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts." *Woodard v. Mordecai*, 234 N.C. 463, 470, 67 S.E.2d 639, 644 (1951) (citations omitted).

> Rule 52(a)(1) does not require the trial court to recite all of the evidentiary facts; it is required only to find the ultimate facts, i.e., those specific material facts which are determinative of the questions involved in the action and from which an appellate court can determine whether the findings are supported by the

evidence and, in turn, support the conclusions of law reached by the trial court.

*Mann Contractors, Inc. v. Flair with Goldsmith Consultants-II, Inc.*, 135 N.C. App. 772, 774, 522 S.E.2d 118, 120-21 (1999) (citing *Farmers Bank v. Brown Distribs., Inc.,* 307 N.C. 342, 298 S.E.2d 357 (1983)).

In the instant case, Plaintiff argues the trial court was required to make a finding on the validity of the alleged Separation Agreement because it raised an issue of ultimate fact. Plaintiff accurately states a valid separation agreement can serve as a bar to an equitable distribution claim. *Hagler v. Hagler*, 319 N.C. 287, 295, 354 S.E.2d 228, 234-35 (1987). But in the proceeding below, Plaintiff never asserted a theory that the alleged Separation Agreement barred Defendant's equitable distribution claim. Plaintiff's pleadings did not mention the alleged Separation Agreement, much less raise it as a defense.[4] To the contrary, Plaintiff's Reply admitted key allegations in Defendant's Amended Counterclaim concerning equitable distribution. Namely, Plaintiff admitted: (1) the parties acquired during the marriage

---

[4] In a related argument, Plaintiff contends "[g]enerally, the invocation of a separation agreement to defeat an equitable distribution claim is an affirmative defense which must be pled," but even when the defense is not pled, it may be tried by express or implied consent. However, Plaintiff cites no authorities that support this assertion.

The cases Plaintiff cites to suggest the issue may have been tried by consent are inapposite. *See Miller v. Talton*, 112 N.C. App. 484, 487, 435 S.E.2d 793, 796-97 (1993) (affirmative defense of statute of limitations tried by consent). Indeed, in *Howell v. Landry*, this Court held unpled affirmative defenses of duress and undue influence were tried by consent where the trial court determined those issues as part of its ruling without objection. 96 N.C. App. 516, 526, 386 S.E.2d 610, 616 (1989). On the other hand, the Court held the affirmative defenses of unconscionability, fraud, and inadequate disclosure were neither pled nor litigated, and thus were not properly raised on appeal. *Id.* (citation omitted). Here, no party sought affirmative relief under the Separation Agreement, and the trial court did not make any determination on the validity of the Separation Agreement.

marital and divisible property subject to equitable distribution under N.C. Gen. Stat. § 50-20(b); and (2) "the circumstances of this case and the respective parties . . . warrant that an unequal division of marital property is equitable." Furthermore, at trial, Plaintiff did not contend the alleged Separation Agreement barred Defendant's equitable distribution claim. Nor did Plaintiff ask the trial court to rule on this issue. In fact, Plaintiff acknowledged the Separation Agreement exhibit he introduced was missing a notarized page containing Defendant's signature. Plaintiff confirmed he understood the absence of this page meant the document "didn't meet the statutory definition of a separation agreement[.]"

Thus, because Plaintiff did not raise the alleged Separation Agreement as a defense to Defendant's equitable distribution claim in his pleadings or his arguments and evidence at trial, the document did not raise an issue of ultimate fact "required to establish [his] defense" about which the trial court was required to make a finding. *See Woodard*, 234 N.C. at 470, 67 S.E.2d at 644. Therefore, because Plaintiff did not request a ruling from the trial court on this issue pursuant to N.C. R. App. P. 10(a)(1), this argument is not preserved for our review. Consequently, this argument is dismissed.

II.     Equitable Distribution

Plaintiff next argues the trial court erred in its application of the statutory distributional factors in determining an unequal division of marital property in favor of Defendant was equitable.

N.C. Gen. Stat. § 50-20 governs the distribution of marital and divisible property upon divorce. "Equitable distribution is a three-step process requiring the trial court to (1) determine what is marital [and divisible] property; (2) find the net value of the property; and (3) make an equitable distribution of that property." *Kaylor*, 296 N.C. App. at 82-83, 907 S.E.2d at 761 (citations and quotation marks omitted).

"An equal division of marital property is equitable unless, after considering the factors listed in [N.C.G.S.] § 50-20(c) that were raised by the evidence, the trial court finds that an equal division of marital property would not be equitable under the circumstances." *Id.* at 83, 907 S.E.2d at 761 (citing *Truesdale v. Truesdale*, 89 N.C. App. 445, 450, 366 S.E.2d 512, 516 (1988)).

> If the trial court so finds that an equal division is not equitable, it must make specific findings of fact setting forth the reasons for an unequal division. The trial court need not make exhaustive findings of the evidentiary facts, but must include the ultimate facts considered. The trial court has discretion in determining how much weight to accord to each factor, and a single factor may be sufficient to support an unequal distribution[.]

*Id.* at 83, 907 S.E.2d at 761-62 (citations and quotation marks omitted).

Here, Plaintiff argues the trial court improperly considered factors related to marital fault and misconduct in deciding to order an unequal division of marital property in Defendant's favor. We agree.

In determining whether an unequal division of marital property is equitable,

the trial court "shall consider"[5] the twelve distributional factors listed in N.C. Gen. Stat. § 50-20(c)(1)-(12). The twelfth factor authorizes consideration of "[a]ny other factor that the [trial] court finds just and proper." N.C. Gen. Stat. § 50-20(c)(12) (2025).

In *Smith v. Smith*, our Supreme Court interpreted the Section 50-20(c)(12) catch-all factor through the lens of the statute's eleven enumerated factors, all of which "concern the economy of the marriage, i.e., the source, availability, and use by a wife and husband of economic resources during the course of their marriage." 314 N.C. 80, 86, 332 S.E.2d 682, 686 (1985) (footnote omitted); *see, e.g.*, N.C. Gen. Stat. § 50-20(c)(1) (2025) (the trial court shall consider "[t]he income, property, and liabilities of each party at the time the division of property is to become effective."). In keeping with the economic focus of the enumerated factors, the Court concluded that "under [Section] 50-20(c)(12), the only other considerations which are 'just and proper' . . . are those which are relevant to the marital economy." *Smith*, 314 N.C. at 87, 332 S.E.2d at 687. Therefore, the Court "h[e]ld that marital fault or misconduct of the parties which is not related to the economic condition of the marriage is not germane to a division of marital property under [Section] 50-20(c) and should not be considered" by the trial court. *Id.* (citations omitted). In other words, "[m]arital fault,

---

[5] While Section 50-20(c) requires consideration of all twelve distributional factors, the trial court "must only make findings concerning those factors for which evidence was presented." *Tucker v. Miller*, 113 N.C. App. 785, 789, 440 S.E.2d 315, 318 (1994) (citation omitted).

without economic consequences, is not properly considered as a distributional factor." *Fountain v. Fountain*, 148 N.C. App. 329, 341, 559 S.E.2d 25, 34 (2002) (citing *Smith*, 314 N.C. at 87, 331 S.E.2d at 687).

In the case *sub judice*, the trial court, expressly citing Section 50-20(c)(12), stated the following in Finding 21(d): "Plaintiff's excessive alcohol use and Domestic Violence, including taking [Defendant's] cards, ID, and passport as well as [Plaintiff's] threat to kill [Defendant] during the marriage." Finding 21(d) is clearly improper under *Smith v. Smith*; alcohol abuse, domestic violence, death threats, and taking a spouse's identity documents are examples of marital misconduct that are "not related to the economic condition of the marriage." 314 N.C. at 87, 332 S.E.2d at 687. Therefore, because this information is "not germane" to the division of marital property under Section 50-20(c), the trial court erred by considering it. *See id.*

The trial court made three other Findings[6] in determining "an unequal division in favor of Defendant is equitable[.]" However, on appellate review, "we cannot determine the weight assigned by the trial court . . . [to the] inappropriate distributional factors" stated in Finding 21(d). *Fountain*, 148 N.C. App. at 342, 559 S.E.2d at 35 (citation omitted). Therefore, we must vacate the Order and remand this case to the trial court "for a reassessment of its decision to order an unequal division

---

[6] Plaintiff also challenges portions of Findings 21(a), 21(b), and 21(c). Plaintiff argues these Findings are not supported by competent evidence. We disagree. Upon careful review of the Record, we conclude the challenged Findings are supported by competent evidence. Therefore, we do not address Plaintiff's challenges to Findings 21(a), 21(b), and 21(c).

without considering the improper factors." *Id.* (citing *Becker v. Becker*, 127 N.C. App. 409, 412, 489 S.E.2d 909, 912 (1997)).

III.     Survivor Benefit Plan

In his final argument, Plaintiff asserts the trial court erred by ordering him to "maintain Survivor Benefit Plan Coverage with Defendant as the beneficiary of said coverage."

> This Court has described the Survivor Benefit Plan (SBP) as
>
> > a plan, managed by the [Department of] Defense Finance and Accounting Service ("DFAS"), available to eligible military retirees whereby some retirement pay is withheld monthly to participate in a plan to provide a surviving spouse, former spouse, or other designate, with monthly benefits upon the death of the participating serviceperson.

*Ellison v. Ellison,* 242 N.C. App. 386, 387, 776 S.E.2d 522, 523-24 (2015). *See also* 10 U.S.C. § § 1448-1455 (statutory provisions related to SBP).

Plaintiff first contends no evidence about SBP was introduced at trial, and therefore the trial court had "no evidentiary basis" on which to classify SBP as marital property or order Plaintiff to maintain SBP with Defendant as the beneficiary. We disagree. There is evidence in the Record on Appeal supporting the existence of SBP coverage as part of Plaintiff's overall military retirement benefits.

The Record contains a copy of Plaintiff's military "Retiree Account Statement," which lists an effective date of 23 January 2023 (Retirement Statement). The Retirement Statement references "SURVIVOR BENEFIT PLAN (SBP) COVERAGE"

and indicates the coverage type as "SPOUSE ONLY." A sum of $63.49 for "SBP COSTS" appears to have been deducted from Plaintiff's gross retirement pay. In a separate box, labeled "ARREARS OF PAY BENEFICIARY INFORMATION," the Retirement Statement lists "WHEELER, KIYOKA" (Defendant) as the sole beneficiary, and Defendant's relationship to Plaintiff as "WIFE." Further, the Retirement Statement was introduced by defense counsel as "Defendant's Exhibit 17."[7] Defense counsel cross-examined Plaintiff about Exhibit 17, though he was not questioned about its references to SBP, and gave no testimony about SBP. Thus, the Record tends to show that as of January 2023, Plaintiff paid for SBP coverage and Defendant was the beneficiary. Therefore, we cannot agree with Plaintiff's claim that the Record "is devoid of any reference" to SBP.

Next, we consider whether the trial court erred by classifying and distributing SBP to Defendant as marital property. "Equitable distribution is a three-step process requiring the trial court to (1) determine what is marital [and divisible] property; (2) find the net value of the property; and (3) make an equitable distribution of that property." *Kaylor*, 296 N.C. App. at 83, 907 S.E.2d at 761 (citations and quotation marks omitted). As relevant here, the duty to classify requires the trial court to

---

[7] Defense counsel later moved to introduce "Defendant's Exhibits 1 through 19," which would include the Retirement Statement as Exhibit 17. Plaintiff's counsel objected on the basis he had "not read all of [Defendant's exhibits]" and asked the trial court to "keep[ ] it to what the evidence was presented today." The trial court stated "[i]t's admitted in terms of the documents supporting the testimony today." Because Exhibit 17 supported testimony at trial, we consider it as having been admitted into evidence.

"ascertain upon appropriate findings of fact, what is marital property[.]" *Willis v. Willis*, 86 N.C. App. 546, 550, 358 S.E.2d 571, 573 (1987) (citation omitted). Parties may stipulate to the classification of property. *Zurofsky v. Shaffer*, 236 N.C. App. 219, 236, 763 S.E.2d 755, 765 (2014) (citation omitted).

Here, the trial court's Order stated the parties had stipulated that a "marital portion" of Plaintiff's "military pension or retired pay . . . is subject to marital property division." The trial court therefore found "Defendant is entitled to a share of Plaintiff's military retirement benefits, as set out in the Decree below." In its Decree, the trial court stated "Plaintiff's military retired pay constitutes marital property to the extent it coincided with the marriage and shall be divided as follows: . . . . Plaintiff shall maintain Survivor Benefit Plan Coverage with Defendant as the beneficiary of said coverage."

At trial, neither party specifically raised the status of SBP for the purpose of classification. In particular, we observe that Plaintiff did not even mention SBP at trial—much less challenge its status as distributable marital property, as he now does on appeal. Absent specific arguments by the parties, the trial court appears to have analyzed SBP using the only evidence it had: Plaintiff's Retirement Statement. The Retirement Statement indicates that as of January 2023, money was being deducted from Plaintiff's gross military retirement pay to cover the cost of "Spouse Only" SBP coverage. The trial court, following the parties' stipulation to classifying Plaintiff's military retirement benefits as marital property, found "Defendant is

entitled to a share of Plaintiff's military retirement benefits[.]" Finally, in its Decree, the trial court ordered Plaintiff to maintain SBP coverage with Defendant as the beneficiary. Thus, we cannot say the trial court, based on the stipulations and evidence before it, exceeded its authority by classifying SBP as marital property and ordering Plaintiff to maintain it with Defendant as the beneficiary.

The remaining question is whether this Court should reach the issue of how SBP—a federally administered benefit for military veterans—should interact with the North Carolina equitable distribution statute. Our appellate courts have not yet addressed this issue. In his brief, Plaintiff points us to *Ellison v. Ellison*, where this Court observed, "[i]t is unclear that SBP benefits are allocated pursuant to equitable distribution[.]" 242 N.C. App. at 390, 776 S.E.2d at 525. To be clear, this sentence is dicta. As the *Ellison* Court "[did] not recognize the present action as one for equitable distribution," it did not analyze the question of SBP in the context of equitable distribution. *Id.* Plaintiff next claims "no subsequent decision [after *Ellison*] has definitively resolved [the] issue" of SBP's status vis-a-vis equitable distribution. Our research does not reveal such a case either. But, contrary to Plaintiff's argument, it does not follow that this Court should now weigh in on an issue not argued at trial and barely referenced in the Record with scant briefing. We therefore decline Plaintiff's request to conclude the trial court "erred in ordering [Plaintiff] to obtain

SBP for [Defendant]."[8]

Instead, on remand, we instruct the trial court to hold a hearing wherein the parties may present arguments and evidence on the SBP issue. This hearing should permit arguments regarding the appropriate methods of classification, valuation, and distribution of SBP, including, but not limited to, the subject of whether SBP should be considered a component of Plaintiff's military retirement benefits or as a distinct asset subject to independent distribution. In its discretion, the trial court may reconsider whether Plaintiff may be required to "maintain" SBP as part of an equitable distribution order.

## Conclusion

Thus, the trial court erroneously considered improper non-economic factors in determining an unequal distribution was equitable in this case. Therefore, the trial court erred in awarding an unequal distribution based on those factors. Consequently, the trial court's Order is vacated. Accordingly, for the foregoing reasons, we vacate the Order and remand this case to the trial court for further proceedings to reconsider its equitable distribution. In addition, the trial court may also reconsider the classification, valuation, and distribution of SBP based on argument and evidence presented by the parties.

---

[8] We note this assertion in Plaintiff's brief misstates the contents of the Order. The trial court ordered Plaintiff to "maintain" SBP, not to "obtain" it.

VACATED AND REMANDED.

Judges CARPENTER and FREEMAN concur.